RECEIVED
IN ALEXANDRIA, LA.

APR - 9 2013

TONY R. MOORE, CLERK

BY_____
          DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

WALTER HOUSTON #100087          DOCKET NO. 1:10-CV-722; SEC. P

VERSUS                          JUDGE TRIMBLE

TIM WILKINSON, ET AL.           MAGISTRATE JUDGE KIRK

## REPORT AND RECOMMENDATION

Pro se Plaintiff, Walter Houston, proceeding *in forma pauperis*, filed the instant civil rights complaint[1] pursuant to 42 U.S.C. §1983. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (DOC), and he is incarcerated at the Winn Correctional Center (WNC) in Winnfield, Louisiana. He complains that he is subjected to illegal searches twice a day in violation of his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. He seeks compensatory and punitive damages, as well as injunctive relief.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### Factual Allegations

Plaintiff Walter Houston alleges that he has been working at the Prison Enterprises Garment Factory at WNC since approximately

---

[1]Plaintiff's complaint is an exact copy of the complaints filed by Inmate James Stevenson (10-cv-520), Charles Moore (10-cv-525), Ricky Gipson (10-cv-524), and Walter Houston (10-cv-722)(although Mr. Houston's is typed, and the others are hand-written).

August 2009. He alleges that two to three times per day, he is forced to undergo what he has described as "'deep' anal cavity and genital inspection searches," which he finds humiliating and degrading. There is no nurse or doctor on hand to examine each inmate, and the inspections of the "anal cavity" is done by non-medical staff members. He complains that these searches are done without probable cause.

Plaintiff claims that the searches are unnecessary because there is an assigned "tool man," Inmate Jimmie McVay, who collects each inmate's "small plastic scissors" before any inmate can leave the garment factory. Therefore, he feels there is no need for the strip and cavity searches.

Plaintiff complains that the searches constitute sexual harassment because one of the officers is "openly gay," and he has commented on the inmates' bodies. He alleges that this officer was removed from the strip search team in February 2010.

Plaintiff alleges that the room where strip searches are conducted is unsanitary and can lead to the spread of disease.

Plaintiff claims that his Administrative Remedy Procedure was rejected because the "defendants did not want to be exposed." [Doc. #1, p.7]

Plaintiff claims that the defendants exposed him to "dangerous loud toxic paint fumes chemicals" from the auto body shop located in the garment factory building. [Doc. #1, p.9]

2

### Law and Analysis

Plaintiff's complaint is identical to that of several other inmates, as noted above.  The inmates all alleged that they were subjected **"deep"** *body cavity searches*, conducted by non-medical personnel.  It was initially unclear whether these so-called "cavity searches" were **visual** inspections *or* **manual** searches involving the insertion of a finger or medical tool into the Plaintiff's rectum.[2]  It has become apparent that the "cavity searches" complained of were **visual inspections only**.[3]

First, probable cause is not required to conduct strip searches, including visual cavity searches, on convicted prisoners. See Bell v. Wolfish, 441 U.S. 520, 558-59 (1979)(finding visual strip searches conducted without probable cause were not unreasonable under the Fourth Amendment).  The cases cited by Plaintiff involve cavity searches outside of jail/prison, performed on people in the "free world."

Next, a strip search or visual body cavity search of a prison inmate, which includes the exposure of body cavities for **visual** inspection, is not per se unreasonable under the Fourth Amendment.

---

[2]Unfortunately, the terms used to describe and categorize strip searches, *visual* body cavity searches, and *physical or manual* body cavity searches are often used interchangeably in court opinions, pleadings, and in legislation.  This inconsistency in language results in a confused body of law.  See eg., William J. Simonitsch, Visual Body Cavity Searches Incident to Arrest: Validity Under the Fourth Amendment, 54 U. Miami L. Rev. 665, 667 (2000).

[3]*Hicks v. CCA*, 1:10-cv-20 (W.D.La.), Doc.#116.

See Thorne v. Jones, 765 F.2d 1276 (5th Cir. 1985), citing United States v. Lilly, 576 F.2d 1240 (5th Cir. 1978).   The Fourth Amendment requires only that these searches be reasonable under all the facts and circumstances in which they are performed. See Elliott v. Lynn, 38 F.3d 188 (5th Cir. 1994)(citations omitted). As articulated in this context by the United States Supreme Court in Bell v. Wolfish:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

441 U.S. 520, 559 (1979).  The Fifth Circuit has interpreted this statement of reasonableness as "striking a balance 'in favor of deference to prison authorities' views of institutional safety requirements against the admittedly legitimate claims of inmates not to be searched in a humiliating and degrading manner.'" Elliott v. Lynn, *supra*, quoting Watt v. City of Richardson Police Dept., 849 F.2d 195, 196 (5th Cir. 1988).

In this case, the "cavity searches" complained of by Plaintiff were only visual inspections of Plaintiff's rectum, and no physical intrusion into any orifice of Plaintiff's body was involved. There is an obvious penological interest in the maintenance of security and location of contraband within the prison. See Oliver v. Scott, 276 F.3d 736, 743 (5th Cir. 2002).  Plaintiff acknowledges the

possibility of inmates removing tools from the garment factory. [Doc. #1, p.7]  However, he states that before any inmate leaves the garment factory, all tools are accounted for by the "tool man." Although this precaution monitors the tools, it does not account for objects that are not tools, per se, but could be made into weapons if removed from the factory.  Plaintiff's conclusion that the searches are unnecessary is conclusory.

Plaintiff complains of sexual harassment by an officer who has not worked in the "strip search" capacity since February 2010. Plaintiff claims that the officer was "openly gay" and made comments about the inmates bodies during the strip searches. Plaintiff alleges that once the D.O.C. found out about complaints of harassment by the inmates, they immediately took the officer "off the strip search team."  Moreover, as a general rule, threatening or abusive language and gestures of a custodial officer do not, even if true, amount to constitutional violations.  Bender v. Brumley, 1 F.3d 271, 274 n.3 (5th Cir. 1993); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983); White v. Gutierez, 274 Fed.Appx. 349 (5th Cir. 2008)(inmate alleged that prison guards sexually harassed him by calling him names concerning his sexual orientation; Fifth Circuit held that verbal abuse and threatening language and gestures do not give rise to a cause of action under Section 1983).

Plaintiff complains of unsanitary conditions in the room where

strip searches were/are conducted. Conditions of confinement claims are analyzed under the Eighth Amendment and have two required components. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). The deprivation alleged must be sufficiently serious. See id. Also, the prison official must have acted with a sufficiently culpable state of mind. See id.; Farmer v. Brennan, 511 U.S. 825, 838 (1994). In prison conditions of confinement cases, that state of mind is deliberate indifference, which the Supreme Court has defined as knowing of and disregarding an excessive risk to inmate health or safety. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). The cleanliness or sterility of the room could pose an unreasonable risk *if* the inmates were being subjected to manual searches of their body cavities. However, Plaintiff's body cavities were not manually searched. Plaintiff's allegation that the condition of the search room put him at an unreasonable risk of danger is conclusory. Additionally, Plaintiff's allegation that the room was not properly sanitized is conclusory.

Plaintiff complains that he smelled fumes from the auto body shop, which is located next to the garment factory. Plaintiff has not alleged that these "fumes" were "so serious as to deprive him of the minimal measure of life's necessities ..." See Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)(quotation marks omitted). Additionally Plaintiff has not allege any physical injury or illness as a result of the alleged "fumes."

Plaintiff complains that his grievances were not resolved to his satisfaction. An inmate has no constitutional right to a grievance procedure, and has no due process liberty interest in having his grievance resolved to his satisfaction. See Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005).

Plaintiff complains that the defendants have violated Louisiana Department of Regulation policies regarding searches of inmates. Inmates' right to be free from unconstitutional searches arises under the Constitution of the United States, not state policy. The failure of state officials to fulfill their duties under state law does not give rise to a federal constitutional claim. See Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996) (a prison official's failure to follow the prison's own policies, procedures, and regulations does not constitute a violation of due process if constitutional minima are nevertheless met); Giovanni v. Lynn, 48 F.3d 908, 912 (5th Cir. 1995), cert. denied, 516 U.S. 860 (1995) (a mere failure to accord procedural protection called for by state law or regulation does not of itself amount to a denial of due process); Murphy v. Collins, 26 F.3d 541, 543 (5th Cir. 1994) (a state's failure to follow its own procedural regulations does not constitute a violation of due process if constitutional minima are met); Murray v. Mississippi Department of Corrections, 911 F.2d 1167, 1168 (5th Cir.1990), cert. denied, 498 U.S. 1050 (1991) (alleged violations of a state statute did not give rise to federal

constitutional claims); Jackson v. Cain, 864 F.2d 1235, 1251 (5th Cir. 1989). As such, Plaintiff's claim should be dismissed.

To the extent Plaintiff seeks to assert a claim for vicarious liability, his claim fails. Well-settled §1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates actions. Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injury. See Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. den., 508 U.S. 951 (1993). Further, just as a municipal corporation is not vicariously liable for the constitutional torts of its employees, a private corporation is not vicariously liable under §1983 for its employees' deprivations of others' civil rights.

Plaintiff cannot show a constitutional violation based on the facts alleged. Even if he could, he would not be entitled to compensatory damages. Under 42 U.S.C. §1997e(e), no federal civil action may be brought by a prisoner for mental or emotional injury suffered while in custody without a prior showing of physical injury. In this case, Plaintiff has not shown that he suffered any physical injury. Likewise, even if Plaintiff could show the violation of his rights, he would not be entitled to punitive damages. "[P]unitive damages may be awarded only when the

defendant's conduct is 'motivated by evil intent' or demonstrates 'reckless or callous indifference' to a person's constitutional rights.'" Williams v. Kaufman County, 352 F.3d 994, 1015 (5th Cir. 2003)(internal quotations omitted). It does require "recklessness in its subjective form," i.e. "a 'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.'" Williams, 352 F.3d at 1015 (citing Kolstad, 527 U.S. at 526). Plaintiff has not presented allegations that the defendants conducted strip and visual cavity searches because of an evil intent or criminal indifference. The searches were conducted when the prisoners left the garment factory to eliminate the removal of tools or materials that could be used as weapons. Plaintiff recognizes the purpose of the searches, but feels they are unnecessary due to the effectiveness of the "tool man."

Plaintiff requests that injunctive relief be granted with a Court order mandating that WNC cease strip and visual cavity searches. Injunctive relief in the form of "superintending federal injunctive decrees directing state officials" to act or refrain from acting in a certain manner is an extraordinary remedy. See Morrow v. Harwell, 768 F.2d 619, 627 (5th Cir. 1985). Plaintiff has not demonstrated that such an extraordinary remedy is appropriate in this case.

### Conclusion

For the forgoing reasons, **IT IS RECOMMENDED** that Plaintiff's

complaint be **DENIED AND DISMISSED with prejudice** for failing to state a claim for which relief can be granted pursuant to 28 U.S.C. §1915(e)(2)(b) and 1915A.

### *Objections*

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.

THUS DONE AND SIGNED at Alexandria, Louisiana, this _____ day of April, 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE